**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:10-CR-260-MOC-DSC**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) **MEMORANDUM AND**<br>) **RECOMMENDATION**<br>GREGORY D. ANDERSON, )<br>)<br>Defendant. )<br>) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Dismiss Money Laundering Counts" (doc. 86) filed July 23, 2012 and "Government's Opposition to Defendant's Motion to Dismiss Money Laundering Counts" (doc. 103) filed August 13, 2012.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>denied</u>, as discussed below.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On June 19, 2012, Defendant was indicted on a Second Superseding Bill of Indictment ("Indictment") by the Grand Jury in the Western District of North Carolina. The Indictment charges Defendant with twenty-three counts of conspiracy, bank fraud, wire fraud and false statements in HUD documents based on a mortgage fraud scheme. Defendant is also charged with twenty-two counts of concealment money laundering.

Specifically, the Indictment alleges that beginning no later than August 31, 2006, and continuing through at least on or about December 18, 2009, Defendant operated two companies—Work Solutions, Inc. ("Work Solutions") and Premier Staffing ("Premier"). Doc. 76

at ¶ 7. Work Solutions and Premier were organized by Defendant to provide temporary employees to businesses. Id. The Government alleges that Defendant also used Work Solutions to recruit buyers for his mortgage fraud scheme and to falsely verify that those buyers earned salaries that would qualify them for loans. Id.

The Indictment also alleges that Defendant would make real estate purchases where the sellers would allow him and his co-conspirators to inflate the value of the house, so long as the sellers received their asking price. Id. at ¶ 4. In some transactions, Defendant obtained a list of repairs that the seller had completed before the houses were listed for sale. Id. at ¶ 24. Defendant used those repair lists to create false invoices from shell remodeling companies that he controlled. Id.

The Government asserts that the lenders were unaware of Defendant's involvement in these transactions. Id. at ¶ 10. In order to extract his "cut" of the proceeds without alerting the lenders, Defendant used shell remodeling companies and fraudulent mechanics liens to justify payments from the closing proceeds. Id. at ¶ 9. As alleged in the Indictment, "[s]hell companies" are those which exist in name only and do not perform services or otherwise conduct any legitimate business. Id. at ¶ 6. Designer Solutions, Homework Design and Maintenance ("Homework"), T&T Remodeling ("T&T" or "TNT"), and Metrolina Remodeling ("Metrolina") were shell remodeling companies used by Defendant to receive closing proceeds. Id. Defendant recruited friends and acquaintances to sign documents creating these shell companies and thereafter controlled the companies himself. Id. at ¶ 20. At the time of closing, the closing attorney or agent would be presented with an invoice for remodeling purportedly performed by one of the shell companies. Id. at ¶ 24. The closing attorney would then issue a check made payable to that company. Id.

Counts twenty-four through thirty-four allege that Defendant cashed the checks made

payable to the shell remodeling companies at a local check cashing business in order to conceal the source and nature of the proceeds. Id. at ¶¶ 46-48. The Indictment alleges that each instance of check cashing "in fact involved the proceeds of specified unlawful activity" and that Defendant "knew that the transaction was designed at least in part to conceal or disguise the nature, source, ownership, or control of proceeds of a specified unlawful activity by converting the funds from checks payable to the shell repair and remodeling companies to cash that he could control and spend at his will." Id. at ¶ 48. All in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

Counts thirty-five through forty-five charge the same check cashing transactions contained in counts twenty-four through thirty-four as violations of 18 U.S.C. § 1957, which prohibits, knowingly engaging in a monetary transaction in "criminally derived property" over $10,000 which is "derived from specified unlawful activity." Id. at ¶ 49-50.

Defendant argues in the instant Motion that the Court should dismiss counts twenty-four through forty-five for failing to state an offense because they "merge" with the underlying bank and wire fraud charges alleged in counts two through eleven. Defendant's argument is based on the Fourth Circuit holdings in United States v. Cloud, 680 F.3d 396 (4th Cir. 2012) and United States v. Halstead, 634 F.3d 270 (4th Cir. 2011).

The Government responds that Cloud does not does not apply to this case and the money laundering counts are properly charged in the Indictment because they involve (1) the transfer of the proceeds from completed mortgage fraud transactions; (2) financial transactions that are not essential to the underlying specified unlawful activity (SUA); and (3) the concealment of proceeds from an unlawful activity, not the promotion of an ongoing scheme.

## II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 7(c)(1) states that "[t]he indictment or information must

be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). The Supreme Court has held that:

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'

Hamling v. United States, 418 U.S. 87, 117 (1974)(internal citations omitted). Federal Rule of Criminal Procedure 12(b)(3)(B) permits a defendant to move for pre-trial dismissal (or at any time while the case is pending) if an indictment fails to state an offense. Fed.R.Crim.P. 12(b)(3)(B).

Specifically, the indictment must meet two requirements. United States v. Hayes, 775 F.2d 1279, 1282 (4th Cir.1985). First, it "must charge all the essential elements of a criminal offense and sufficiently apprise the defendant of what he must be prepared to meet so he will not be misled while preparing his defense." Id. Second, the indictment "must protect the defendant against later prosecution for the same offense." Id. "[W]hen an indictment fails to include an essential element of the offense charged, it thereby fails to charge any federal offense and a conviction under the indictment may not stand...." United States v. Pupo, 841 F.2d 1235, 1239 (4th Cir.1988).

In testing the sufficiency of an indictment, it is the statement of facts that controls the inquiry, not the statutory citations for the underlying offenses. United States v. Hooker, 841 F.2d 1225, 1227 (4th Cir.1988). "[E]very ingredient of crime must be charged in the bill, a general reference to the provisions of the statute being insufficient." Id. at 1228 (quoting Hale v. United States, 89 F.2d 578, 579 (4th Cir.1937)). Generally, an indictment is sufficient if it alleges an offense in the words of the statute, as long as the words used in the indictment "'fully, directly and

4

expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence.'" United States v. Brandon, 298 F.3d 307, 310 (4th Cir.2002) (quoting Hamling v. United States, 418 U.S. 87, 117 (1974)). Each count of an indictment must be legally sufficient in itself. Hooker, 841 F.2d at 1230–31. Thus, a missing element from a challenged count cannot be borrowed from another count if it is not incorporated by reference. Id. at 1231. Nonetheless, the determination of an indictment's validity is based on practical not technical concerns. United States v. Matzkin, 14 F.3d 1014, 1019 (4th Cir.1994).

"[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." United States v. DeLaurentis, 230 F.3d 659, 660 (3d Cir. 2000)(citing United States v. Knox, 396 U.S. 77, 83 n.7 (1969)). At this stage, the question is not whether the government has presented sufficient evidence to support the charge, but solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the offense charged. United States v. Sampson, 371 U.S.75, 78-79 (1962).

Title 18, United States Code, Subsection 1956(a)(1)(A)(i) criminalizes financial transactions conducted with "the intent to promote the carrying on of a [SUA]" (hereinafter "promotion money laundering"). Subsection 1956(a)(1)(B)(i) prohibits such transactions when made with "the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of a [SUA]" (hereinafter "concealment money laundering"). Title 18, United States Code, Section 1957 makes it a crime to engage in a monetary transaction in criminally derived property of a value greater than $10,000. Criminally derived property is defined as "any property constituting or derived from, proceeds obtained from a criminal offense." 18 U.S.C. § 1957(f)(2).

The concept of "merger" between a promotion money laundering charge and the underlying

5

unlawful activity was the subject of the Supreme Court's opinion in United States v. Santos, 553 U.S. 507 (2008). In Santos, the operator of an illegal gambling enterprise paid winning bettors as well as his runners from the receipts of the operation. Id. at 509. The money laundering alleged in Santos amounted to the defendants' operation of the illegal gambling enterprise. The defendants were also charged with illegal gambling in violation of 18 U.S.C. 1955. Id. The Santos defendants complained that they could not be convicted of promotion money laundering because the transactions in that case involved "gross proceeds," rather than "net profits." Id. at 510. In a plurality opinion, the Supreme Court agreed that the word "proceeds" in the money laundering statute meant profits and not gross receipts. Id. Four Justices reasoned that without a "profits" definition of "proceeds," the government could charge promotion money laundering in cases where the money laundering transaction was a "normal" part of the SUA. Id. 519-20.

Applying the rule of lenity, the plurality in Santos held that in the absence of a statutory definition of "proceeds" it could not find that Congress intended such a result. Id. at 514. Without proof that the alleged transaction involved the "profits" of an SUA, the money laundering charge "merges" with the proceeds-generating crime, such that a separate conviction for money laundering would be tantamount to a second conviction for the same offense. Id. According to the plurality, a "profits" definition of "proceeds" eliminates this "merger" problem because by definition profits consist of whatever remains after the expenses of the SUA are paid. Id. at 519-20.

On May 20, 2009, Congress amended Section 1956 by adding the following definition : "[T]he term proceeds means any property, derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9). With Congress overruling Santos by statute, it now applies only to money laundering offenses committed prior to May 20, 2009. See United States v. Arbuckle, 390 F. App'x.

6

412, 414 n.2 (5th Cir. 2010).

In United States v. Halstead, 634 F.3d 270 (4th Cir. 2011) the Fourth Circuit considered whether there was a "merger" between health care fraud charges and money laundering charges. The defendant was a chiropractor who obtained payments from his patients' insurance companies for services that were unnecessary or ineligible under their plans. Id. at 272. In order to disguise his billings for these services, the defendant used a medical billing company to invoice the insurance companies and a separate "management" company to receive payments on the fraudulent invoices. Id. The defendant and his co-conspirators were charged with healthcare fraud in violation of 18 U.S.C. § 1347 and conspiracy to launder money instruments in violation of 18 U.S.C. § 1956(h). Id. at 273. In a collateral attack on his conviction, defendant complained that his money laundering conviction should be vacated because it "merged" with the underlying health care offenses and that the evidence was insufficient at trial to prove that the "proceeds" from his healthcare fraud were "net profits." Id.

The Fourth Circuit rejected the defendant's merger argument, finding that the payments he received from insurance companies were transferred from the billing company to a management company under his control. Id. at 280. The court held that "at the moment the healthcare provider paid money to [the billing company] the crime of healthcare fraud was complete and the money that the healthcare provider paid to the [billing company] was the "proceeds" of the healthcare fraud. Id. Moreover, since the transfers of insurance "proceeds" from the billing company to the defendant's management company were separate and apart from the insurance payments made to the billing company, there was no merger and Santos did not apply.

In United States v. Cloud, 680 F.3d 396 (4th Cir. 2012), the Fourth Circuit applied Santos to a mortgage fraud scheme wherein the defendant "flipped houses" that he sold to straw borrowers

he recruited for their good credit. Id. at 405-406. The indictment alleged that payments made by the defendant including payoffs to co-conspirators who recruited the borrowers, kickbacks to sellers, and initial mortgage payments intended to keep the fraudulent loans from immediately defaulting, all constituted promotion money laundering. Id. The court found that those payments were "essential expenses" of the underlying SUA, much like "the felon who uses stolen money to pay for the rented getaway car." Id. at 406 (citing Santos, 553 U.S. at 516.) Applying Santos, the Fourth Circuit found that the word "proceeds" in Section 1956(a) refers to the profits of the fraud, and not simply to any gross receipts. The court held that a money laundering charge based on a financial transaction that is an integral part of the fraud scheme itself merges with the underlying fraud offense. Cloud, 680 F.3d at 409. The Fourth Circuit noted that "the issue we address today is not likely to arise in many more cases" due to Congress amending the money laundering statute to provide a definition of "proceeds" which includes gross receipts. Id. at n.6.

### III. DISCUSSION

Having reviewed the Indictment and applicable legal standards, the undersigned does not find Defendant's argument here to be persuasive. The Court finds that Defendant's Motion attacks the Government's evidence as opposed to the sufficiency of the Indictment. Defendant does not identify any elements omitted in the offenses charged or any lack of notice as to the charges. This is a very detailed Indictment. The Indictment does not allege that Defendant used the cash proceeds of his fraud solely or even primarily for expenses to operate the scheme. The only allegation in the Indictment with respect to the use of the mortgage fraud proceeds is that "[ANDERSON] would […] distribute the cash proceeds [from the remodeling company checks] to himself and other participants of the scheme." Doc. 76 at ¶¶ 9, 24. Each count clearly alleges every element of the offense and apprises Defendant of the nature of the charges against him.

8

The money laundering charges against Defendant do not allege that he used the proceeds of his unlawful activity to promote his mortgage fraud scheme. As the Indictment makes clear, the "proceeds" from Defendant's mortgage fraud were the checks issued by closing attorneys. As alleged in the Indictment, Defendant's mortgage fraud scheme was complete when the closing attorney handed him a check payable to the remodeling company. Just as the healthcare offense in Halstead was complete when the defendant's billing company received payment, the undersigned finds that the mortgage fraud in this case was complete when the loan proceeds were disbursed to Defendant's straw companies. The Indictment alleges that Defendant used the check cashing store to commit the separate offense of concealment money laundering.

Defendant's check cashing transactions, like the defendant's transfers of healthcare fraud proceeds to the management company in Halstead, were not necessary or essential to the underlying scheme. Defendant's alleged mortgage fraud essentially involved convincing lenders to extend inflated loans to unqualified borrowers. While the loan proceeds were the gross receipts of the fraud, Defendant's net profit was the difference between the seller's asking price and the inflated sales price. Defendant secured his "net profits" from this scheme when the closing attorney used a portion of the loan proceeds to pay the straw companies. See United States v. Singh, 518 F.3d 236, 247 (4th Cir. 2008) (conviction based on prostitute's paying for motel room with money received from her customer did not violate the rule that the money laundering transaction must be separate from the transaction that generated the proceeds because the prostitution offense was complete when the prostitute received payment for her services.) In most transactions alleged in the Indictment, including those alleged as SUA's for the money laundering counts, it was simply not necessary for Defendant to use any of his net profits to accomplish or perpetuate the underlying mortgage fraud scheme.

9

Even if Defendant did provide some of the money he obtained by cashing the remodeling company checks to other participants in the fraud, the undersigned finds that any such amounts were insignificant and not essential to the mortgage fraud scheme. In <u>Cloud</u>, the indictment alleged that in the money laundering transactions, payments to recruiters and straw borrowers involved in subsequent fraudulent transactions were substantial and integral to the operation of the mortgage fraud scheme. There are no such allegations in the Indictment here. In most of the mortgage fraud transactions alleged here, Defendant had no need to share his profits with anyone since he controlled the straw remodeling companies. The defendant in <u>Cloud</u> used proceeds from his scheme to further promote the fraud. Here, the Indictment alleges that Defendant used a check cashing store to conceal and disguise the nature, location, source, ownership and control of his profits as opposed to perpetuating the mortgage fraud.

### III. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the Defendant's "Motion to Dismiss Money Laundering Counts" (doc. 86) be **DENIED**.

### IV. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from

raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED**.

Signed: August 16, 2012

David S. Cayer
United States Magistrate Judge