**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:17-cv-236-MOC**
**(3:10-cr-260-MOC-DSC-1)**

| | | |
|---|---|---|
| **GREGORY D. ANDERSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Amended Motion to Vacate,
Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 8).

## I.    BACKGROUND

Petitioner was indicted for bank fraud, HUD fraud, wire fraud, and concealment money
laundering on December 15, 2010, and an arrest warrant issued that same day. (3:10-cr-260, Doc.
Nos. 1, 2). The Government filed a Superseding Indictment on May 19, 2011, adding a count of
assaulting and causing bodily harm to persons assisting the United States in connection with
Petitioner's April 26, 2011, arrest. (Id., Doc. No. 9).

Petitioner filed a Motion to Suppress, (Id., Doc. No. 25), and a Motion to Dismiss, (Id.,
Doc. No. 32), through appointed counsel Richard Tomberlin. Petitioner argued in the Motion to
Dismiss that the Government breached the Proffer Agreement by indicting him based on
information solicited during his debriefings and grand jury testimony and without first informing
him that it considered the Proffer Agreement to have been breached.

The Motions to Suppress and Dismiss came before the Court for hearing on November 7
and 8, 2011. (Id., Doc. No. 49). Special Agent Rymill testified that he received information from

a state regulatory agency (NC Commissioner of Banks) in December 2009 regarding approximately five loans involving a specific lender and particular loan officer that had red flags that were potential indicators of mortgage fraud. (<u>Id.</u>, Doc. No. 49 at 20). He performed a document analysis in January 2010 at which point he had not yet met Petitioner. (<u>Id.</u>, Doc. No. 49 at 27). He obtained FHA case binders including loan applications, collateral documents, and underwriting programs. He continued the investigation with assistance from FBI Agent Karen Walsh. (<u>Id.</u>, Doc. No. 49 at 28). Borrower interviews occurred in January through March 2010. (<u>Id.</u>, Doc. No. 49 at 29-30). Borrowers' employer Work Solutions, Inc., was investigated in January 2010. (<u>Id.</u>, Doc. No. 49 at 29). The investigation then focused on Amy Smith, a borrower, who is homeless. Smith said that Petitioner provided the documents and money needed to get the loan and the down payment, ostensibly made by her cousin, was actually from Petitioner. (<u>Id.</u>, Doc. No. 49 at 32-33). This classified Petitioner as a promotor.

Agent Rymill went on to testify that, in April 2010, Walsh and Rymill contacted Petitioner on the phone. Petitioner responded favorably and said he wanted to consult with counsel about cooperating. (<u>Id.</u>, Doc. No. 49 at 34). Petitioner hired Rawls and a meeting was scheduled for May 24, 2010. (<u>Id.</u>, Doc. No. 49 at 35). Petitioner signed the Proffer Agreement at Rawls' office. (<u>Id.</u>, Doc. No. 49 at 37).

The Proffer Agreement provides that Petitioner would provide the United States with "complete and truthful information about all criminal activity within his knowledge" in exchange for the Government's agreement that:

> [N]o statements made by [Petitioner] will be used against your client **in the Government's case-in-chief at trial**, except as follows: (1) in any criminal prosecution for crimes of violence and/or murder; (2) to make **derivative use** and pursue any investigative leads suggested by any statements made or other information provided by your client and to use the evidence or information obtained therefrom against your client in any

manner; and (3) for purposes of impeachment, rebuttal, or countering a defense (whether presented through opening statements, cross-examination, or otherwise), including any circumstance in which your client is a witness at any stage of any civil or criminal proceeding and offers testimony different from statements or information provided by your client during the interview session.

(Id., Doc. No. 32-1) (emphasis added).

The Proffer Agreement provides as follows in the event that the Government determines that Petitioner breached the agreement:

It is further agreed that **in the event it is determined by the United States that your client has violated any provision of this Agreement** (including the provision that your client provide complete and truthful information), **all statements made by your client shall be admissible in evidence during the Government's case-in-chief in any criminal proceeding** against your client, including a prosecution for false statements, perjury, or obstruction of justice.

(Id., Doc. No. 32-1) (emphasis added).

Petitioner provided a statement to FBI Special Agent Karen Walsh and HUD Special Agent Brian Rymill the same day he signed the Proffer Agreement. (Id., Doc. No. 32 at 2). Petitioner met with Walsh for a second time without counsel on July 6, 2010. (Id.). On September 22, 2010, and October 19, 2010, Petitioner testified before a federal grand jury pursuant to a subpoena. (Id. at 3).

Prosecutor Savage clarified that Petitioner was not to break the law or withhold any information or try to protect anyone by providing partial information. Savage told Petitioner that his cooperation could result in a motion by the Government and departure from the guidelines. Nobody at the meeting made Petitioner any promises re what sentence he would receive if he cooperated. (Id., Doc. No. 49 at 43). When Petitioner asked what he was looking at as far as sentencing, Savage, Walsh, and Rymill collectively explained the loss amount had not yet been determined, so sentence exposure could not be determined. (Id., Doc. No. 49 at 44). Savage told Petitioner that he would be federally indicted and prosecuted for his role in the offense. (Id., Doc.

No. 49 at 44). Petitioner signed the Proffer Agreement and agreed to cooperate. (<u>Id.</u>, Doc. No. 49 at 45). Savage and Rawls then left and Walsh and Rymill began to debrief Petitioner. There was a verbal agreement that this was an ongoing cooperation agreement, that it would extend as long as he continued to comply and provide information. (<u>Id.</u>, Doc. No. 49 at 47). The information that Petitioner provided on May 24 was supportive of the information that the Government had obtained to that point in the investigation; they did not break any new ground. (<u>Id.</u>, Doc. No. 49 at 48). Petitioner agreed to produce documentsd that corroborated his statements at the meeting, and would indicate other parties involved in the fraud. Rymill considered Petitioner to be cooperative at this point. They agreed to stay in contact and set up future meetings.

Between May 6 and June 15, 2010, Petitioner failed to provide any documents and had broken some appointments with Rymill and Walsh, although he indicated that he still wanted to cooperate. (<u>Id.</u>, Doc. No. 49 at 49). Petitioner also said that he wanted to get another lawyer, Harold Cogdell. Agents were finally able to schedule a meeting with Petitioner on July 6, and no lawyer accompanied Petitioner. (<u>Id.</u>, Doc. No. 49 at 51). At that time, Petitioner said he was not represented. That concerned Rymill so he advised him of his <u>Miranda</u>[1] rights and ability to have counsel present during the meeting. (<u>Id.</u>, Doc. No. 49 at 55-56). Petitioner asked why the <u>Miranda</u> form was necessary if they were still under the Proffer Agreement and the agents explained that he had indicated a desire to have counsel and they wanted to make him fully aware that he had the right to counsel and not to participate in the meeting if he so chose. (<u>Id.</u>, Doc. No. 49 at 60). Petitioner signed the waiver form and said that he did not want a lawyer present at the meeting and was willing to answer questions voluntarily. Rymill understood that the statements made during the July 6 meeting would be covered by the Proffer Agreement. (<u>Id.</u>, Doc. No. 49 at 59). Petitioner

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

came to the meeting voluntarily, was free to leave, and never indicated that he wished to terminate the meeting. Petitioner was also presented with a False Statements form that explains it is a crime to provide false statements under the United States Code. (<u>Id.</u>, Doc. No. 49 at 61). The form indicates that Petitioner verbally acknowledged that he understood but he refused to sign it. (<u>Id.</u>, Doc. No. 49 at 61). The form was read to Petitioner because of the difficulty in scheduling a meeting and his failure to bring any records that he indicated he would bring pursuant to the Proffer Agreement. Agents feared that Petitioner might provide information that was not true and complete, so they warned him there would be consequence for doing so. The July 6 meeting was principally concerned with other subjects and targets rather than the case against Petitioner. (<u>Id.</u>, Doc. No. 49 at 62). Agents explained during the meeting that they did not feel he had cooperated at that point and that his efforts needed to improve. He had an opportunity at that time to cure any default.

The Government had done more investigation and review of loan files since the first meeting and obtained confidential bank information including Petitioner's credit history including a bankruptcy. (<u>Id.</u>, Doc. No. 49 at 64-65). They asked Petitioner questions about a house he owned and had bought for $850,000 and false statements made in connection with that property. Petitioner answered the questions but did not volunteer the information. At one point he refused to identify two individuals. (<u>Id.</u>, Doc. No. 49 at 66). Petitioner's statements indicated that there was a friend he knew at a bank who appeared to have violated federal law. This fell within the Proffer Agreement but Petitioner outright refused to provide the information. (<u>Id.</u>, Doc. No. 49 at 68). Agents asked Petitioner for documents that had been discussed at the May 24 meeting and Petitioner said he would try to get them together but he failed to do so. (<u>Id.</u>, Doc. No. 49 at 69). Walsh told Petitioner that he was not cooperating and he needed to decide if he was going to

cooperate with the Government. (Id., Doc. No. 49 at 70). There were no further interviews. After Petitioner's lack of response or production of documents, they proceeded with the investigation against him. (Id., Doc. No. 49 at 71).

The Government issued subpoenas to lenders to get loan folders and records associated with Petitioner and Work Solutions; they did not gain any of that information from Petitioner. (Id., Doc. No. 49 at 71-72).

Serving subpoenas on Petitioner was difficult. They finally were able to serve a grand jury subpoena through Petitioner's lawyer at the time, Randy Lee. (Id., Doc. No. 49 at 74). The subpoena was not issued under the terms of the Proffer Agreement. Petitioner appeared before the grand jury on September 22, 2010, with Lee in response to the subpoena of Petitioner with regards to Work Solutions. (Id., Doc. No. 49 at 75). Petitioner produced documents during his appearance. Petitioner advised the grand jury that there were additional documents he did not bring. (Id., Doc. No. 49 at 77). Petitioner was directed to come back when he had the records. (Id., Doc. No. 49 at 78). Petitioner reappeared on October 20, 2010 with Lee and he again failed to produce the records. (Id., Doc. No. 49 at 79-80). The prosecutor told Petitioner at the second grand jury meeting that his appearance and production of evidence was not pursuant to the Proffer Agreement, it was pursuant to the subpoena, and there was no agreement at that time; Lee did not dispute this. (Id., Doc. No. 49 at 81). Petitioner was asked no questions in the grand jury on either September or October about the offenses and his involvement; only documents were discussed. (Id., Doc. No. 49 at 86-87).

Additional investigation and interviews occurred in September, October, and November 2010. A number of witnesses testified in the grand jury regarding companies that appeared to be rehabilitation or repair companies that would receive a distribution at the settlement of home

purchases. (Id., Doc. No. 49 at 82). These witnesses had not been interviewed prior to the grand

jury on meeting on September 22, 2010. Investigators learned that Petitioner had approached these

people to set up companies. (Id., Doc. No. 49 at 82). Independent of anything Petitioner told

investigators, they got closing files to the transactions and found disbursement checks from the

lawyers' trust account to the rehabilitation companies and cashed at a check casher and got a file

of records regarding Petitioner. (Id., Doc. No. 49 at 83-84). Based on that and the other

information, Rymill received in the investigation, he came before the grand jury on December 15,

2010 and presented a case for Petitioner's indictment. (Id., Doc. No. 49 at 85). In that presentation,

Rymill did not make any reference to any statement made by Petitioner pursuant to the Proffer

Agreement in May or July 2010, and Petitioner did not make any substantive statements to Rymill

or the grand jury about the offenses at any time other than those two days. The information that

Rymill presented to the grand jury came solely from his investigation, interviews of witnesses, and

analysis of loan files and other records. (Id., Doc. No. 49 at 86-87).

Mr. Rawls, Petitioner's counsel at the time he signed the Proffer Agreement, testified at

the Motion to Dismiss hearing that Petitioner was made no promise about what an indictment

would look like or the sentence he would receive for any offense he was prosecuted for, that they

went over the agreement line by line, and that Petitioner was told the Government wanted truthful

information. (Id., Doc. No. 49 at 96). It was understood that the agreement would extend to

subsequent interviews Petitioner had with the Government so long as Petitioner complied with the

agreement.

After Petitioner was arrested on April 26, 2011, Agents discovered documents at a hotel

where Petitioner had previously stayed and in the trunk of a repossessed car, which demonstrated

that Petitioner had failed to provide information pursuant to the Proffer Agreement. (Id., Doc. No.

49 at 113, 132-33). On May 18, 2011, the grand jury met and issued a superseding indictment adding a count; no reference to any of Petititoner's proffered statements was made at that meeting. (Id., Doc. No. 49 at 147).

The Court denied Petitioner's Motion to Dismiss because there was no evidence that the Government made anything other than derivative use of any of the statements Petitioner made, there was no evidence that the Government breached the Agreement in any way, and Petitioner breached the agreement by failing to tell the truth in the last interview, avoiding the Government, and failing to turn over documents he said he would provide. (Id., Doc. No. 49 at 314-15). The Court also denied Petitioner's Motion to Suppress the documents that Agents recovered from the hotel and repossessed car. (Id., Doc. No. 49 at 315-16)

Petitioner filed a Supplemental Motion to Dismiss arguing that the Government committed anticipatory breach of the Proffer Agreement by presenting Miranda warnings to him at the second debriefing or, at least, created an ambiguity about the Government's intention to honor the proffer agreement, which excused any subsequent breach by Petitioner. (Id., Doc. No. 62). The Court held a second hearing and denied the Supplemental Motion to Dismiss. (Id., Doc. No. 120).

The United States subsequently filed a Second Superseding Indictment that added two co-defendants and conspiracy counts. The counts pertaining to Petitioner were: Count (1), conspiracy to defraud the United States (bank fraud, wire fraud, and money laundering); Counts (2)-(14), bank fraud and aiding and abetting the same; Count (15), wire fraud and aiding and abetting the same; Counts (16)-(23), HUD fraud and aiding and abetting the same; Counts (24)-(34), concealment money laundering and aiding and abetting the same; Counts (35)-(45), money laundering and aiding and abetting the same; and Count (46), assaulting and causing bodily injury to a person assisting the United States. (Id., Doc. No. 76).

Petitioner entered a conditional plea agreement in which he reserved appellate review of the Court's July 26, denial of his Supplemental Motion to Dismiss. (Id., Doc. No. 112); see (Id., Doc. No. 62). The Plea Agreement expressly waived Petitioner's right to appeal or collaterally attack the conviction on any grounds other than ineffective assistance of counsel or prosecutorial misconduct. He pled guilty to Counts (1), (2), (22), (33), and (46) on August 31, 2012, in exchange for the Government's dismissal of the remaining counts. (Id., Doc. No. 112 at 1). Petitioner acknowledged in the Plea Agreement that the statutory maximum and minimum sentences for each count. (Id., Doc. No. 112 at 2). The Plea Agreement states that Petitioner is aware that the Court will consider the United States Sentencing Guidelines in determining his sentence, the sentence has not yet been determined and any estimate of the likely sentence "is a prediction rather than a promise," the Court has final discretion to impose any sentence up to the statutory maximum for each count, the Court is not bound by any recommendations or agreements by the United States, and Petitioner may not withdraw his guilty pleas as a result of the sentence imposed. (Id., Doc. No. 112 at 2).

The parties agreed to jointly recommend that the Court make several findings and conclusions with regards to the U.S. Sentencing Guidelines including the amount of the intended loss and that Petitioner inflicted bodily harm on three Charlotte-Mecklenburg Police Department officers during his arrest. However, the parties reserved their right to litigate the applicability of any U.S. Sentencing Guideline provisions that were not specifically reserved and to seek a departure or variance from the applicable advisory range, and the agreement acknowledges that the United States will inform the Court of all facts pertinent to the sentencing process. (Id., Doc. No. 112 at 2-3).

Petitioner stipulated that there is a factual basis for the plea "as set forth in the **Factual Resume filed with this plea agreement**." (Id., Doc. No. 112 at 5) (emphasis added). Petitioner acknowledged that his Factual Resume will be signed under oath and may not be contradicted after it is accepted by the Court. He also agreed that the Court may supplement Defendant's Factual Resume with the offense conduct set out in the Presentence Report.

Petitioner expressly waived the right to be tried by a jury, to be assisted by an attorney at trial, to confront and cross-examine witnesses, and not to be compelled to incriminate himself. (Id., Doc. No. 112 at 6). Petitioner also expressly waived the rights to appeal and file a motion for post-conviction relief except with regards to the Court's adverse ruling on his Supplemental Motion to Dismiss, (Id., Doc. No. 62), and claims of ineffective assistance of counsel and prosecutorial misconduct. (Id., Doc. No. 112 at 6). The plea agreement contains a cooperation provision which will be within the Government's sole discretion. (Id., Doc. No. 112 at 7-8).

The Plea Agreement's integration clause states:

> There are no agreements, representations, or understandings between the parties in this case, **other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties**.

(Id., Doc. No. 112 at 8) (emphasis added).

Petitioner stated he understood that the only issue reserved for appellate review was whether the Government created an anticipatory breach by reading Petitioner his rights as set forth in the Supplemental Motion to Dismiss, (Id., Doc. No. 62). See (Id., Doc. No. 132 at 63-65). Petitioner acknowledged that he signed the Plea Agreement and Factual Resume, agreed to the facts set forth in the Factual Resume, and was knowingly and voluntarily entering a conditional guilty plea as set forth in those documents. (Id., Doc. No. 132 at 5-6, 81).

The Factual Resume that accompanied the Plea Agreement is signed by Petitioner and defense counsel. (<u>Id.</u>, Doc. No. 111). It states that the facts in it "are true and correct" and that "this Factual Resume may be used by the Court to determine whether to accept [Petitioner's] guilty pleas, by the United States Probation Officer drafting his Pre-Sentence Report and by the Court to determine[e] an appropriate sentence for the offenses to which he is pleading guilty." (<u>Id.</u>, Doc. No. 111 at 1).

The Presentence Investigation Report ("PSR") calculated the base offense level as 27 because the most serious offense is Bank fraud and HUD fraud, with base offense level of 7 and a 16-level enhancement for loss of more than $1 million but less than $2.5 million, a 2-level enhancement fore more than 10 victims, and a 2-level enhancement because Petitioner derived more than $1 million in gross receipts from one or more financial institutions, so the total offense level is 27. (<u>Id.</u>, Doc. No. 214 at ¶ 70). Several enhancements were applied, including four levels for Petitioner's role as organizer of leader of a criminal activity involving five or more participants or was otherwise extensive (USSG § 3B1.1(a)). (<u>Id.</u>, Doc. No. 214 at ¶ 74). Two levels were deducted for acceptance of responsibility and the total offense level was 37. (<u>Id.</u>, Doc. No. 214 at ¶ 79, 81). Petitioner's criminal history score was five and his criminal history category was III. (<u>Id.</u>, Doc. No. 214 at ¶ 99). The resulting guideline range was 262 to 327 months' imprisonment, at least one but not more than three years of supervised release, fines between $20,000 and $1,500,000, and restitution. (<u>Id.</u>, Doc. No. 214 at ¶¶ 136, 140, 146, 149).

At sentencing, the Court eliminated a two-level enhancement for sophisticated means, (<u>id.</u>, Doc. No. 214 ¶ 72), and the total offense level was therefore reduced to 35, (<u>id.</u>, Doc. No. 242 at 1), and the guidelines imprisonment range became 210 to 262 months' imprisonment. (<u>Id.</u>, Doc. No. 242 at 1). The Court varied two levels below the advisory guidelines pursuant to Petitioner's

motion because "the 16 level increase for loss overstates the defendant's responsibility and gain in this matter" and the resulting level "produces a sentence that is sufficient but not greater than necessary to achieve the 3553 factors." (Id., Doc. No. 242 at 3). In a Judgment docketed on September 3, 2014, the Court sentenced Petitioner to a total of 180 months' imprisonment consisting of 60 months for Count (1), 180 months for Counts (2), (33), and (46), and 24 months for Count (22), concurrent, followed by a total of three years of supervised release, and $2,189,641.28 in restitution. (Id., Doc. No. 241).

On direct appeal, Petitioner argued that the Court erred in interpreting Proffer Agreement, finding that the Government did not commit an anticipatory breach of the Proffer Agreement, and that the Court did not err in using information obtained from the Proffer Agreement at sentencing. The Government asserted that Petitioner's waiver of appellate rights in the Plea Agreement barred some of his claims. The Fourth Circuit affirmed in part and dismissed in part on October 21, 2015. United States v. Anderson, 628 Fed. Appx. 872 (4th Cir. 2015). The Fourth Circuit found that the Government did not commit anticipatory breach of the proffer agreement and that the remainder of Petitioner's appeal was foreclosed by the waiver provision in his plea agreement:

> The only argument in Anderson's supplemental motion to dismiss is his argument that the Government committed an anticipatory breach of the proffer agreement. Thus, to the extent Anderson argues that the district court erred in interpreting the proffer agreement and allowing the use of Anderson's proffer statements at sentencing, those claims fall within the scope of the waiver.

Anderson, 628 Fed. Appx. at 875.

In a footnote, the Fourth Circuit stated that, "[t]o the extent Anderson seeks to recast this claim as an allegation of prosecutorial misconduct, he did not adequately preserve the claim because he did not pursue this argument until he filed his reply brief." Id. at 875 n. 3. Further, "Anderson's argument that the Government breached the agreement by using before the grand jury

information obtained during the proffer sessions is a nonjurisdictional defect waived by Andersons' guilty plea … [and] is foreclosed by the waiver provision in the plea agreement." Id. at 875. The Supreme Court denied certiorari on May 2, 2016. Anderson v. United States, 136 S.Ct. 1836 (2016).

Petitioner filed the original § 2255 Motion to Vacate in the instant case on April 27, 2017. (Doc. No. 1).[2] He filed the Amended § 2255 Motion to Vacate, (Doc. No. 8), on February 21, 2018. He raises claims of ineffective assistance of counsel, prosecutorial misconduct, and trial court error. The Government has filed a Response and Petitioner has filed a Reply. (Doc. Nos. 16, 19); see also (Doc. No. 20).

## II.     PROCEDURAL DEFAULT

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." Bousley v. United States, 523 U.S. 614, 621 (1998) (internal citations omitted); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Mikalajunas, 186 F.3d 490, 492–93 (4th Cir. 1999); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994). Actual prejudice is then shown by demonstrating that the error worked to

---

[2] The original § 2255 Motion to Vacate included 23 claims and more than 360 pages of attachments. He subsequently filed a Motion for Leave to Supplement, (Doc. No. 3), attaching 25 pages of materials, and a Motion for Relief, (Doc. No. 4), that raised a claim of fraud on the court and included more than 100 pages of additional arguments and materials. The Court denied the Motions but granted Petitioner leave to file a superseding Amended § 2255 Petition. (Doc. No. 5). Petitioner appealed and the Fourth Circuit dismissed for lack of jurisdiction because the order is nether final nor an appealable interlocutory or collateral order. United States v. Anderson, 727 Fed. Appx. 54 (4th Cir. 2018). The Amended § 2255 Motion to Vacate, (Doc. No. 8), is the operative pleading.

petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). To establish cause based upon ineffective assistance of counsel, a petitioner must show that the attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Murray, 477 U.S. at 488; Strickland v. Washington, 466 U.S. 668, 687 (1984). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a petitioner must show actual innocence by clear and convincing evidence. See Murray, 477 U.S. at 496.

### III.    WAIVER

"When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010) (quoting United States v. Bundy, 392 F.3d 641, 644 (4th Cir. 2004)). The guilty plea "represents a break in the chain of events which has preceded it in the criminal process." Moussaoui, 591 F.3d at 279 (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)). After a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). He is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

Before accepting a guilty plea, a district court must conduct a plea colloquy in which it informs the defendant of, and determines if the defendant comprehends, the nature of the charge to which he is pleading guilty, the maximum possible penalty he faces, any mandatory minimum penalty, and the rights he is relinquishing by pleading guilty. Fed. R. Crim. P. 11(b)(1); United

States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). A court must also ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement. Fed. R. Crim. P. 11(b)(2), (3).

An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Marin, 961 F.2d at 496 (emphasis added).

## IV. LAW OF THE CASE

It is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion." United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on

direct appeal]"). Under the law of the case doctrine, once the decision of an appellate court establishes law of the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal unless: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work a manifest injustice." United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (quoting Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988)); see United States v. Francis, 62 Fed. Appx. 507 (4th Cir. 2003) (applying law of the case doctrine to bar the relitigation on § 2255 review of issues previously litigated on direct appeal).

## V.    SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland, 466 U.S. at 687-88. The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting

Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice

prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

The right to the effective assistance of counsel extends to direct appeal. <u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4th Cir. 2000) (*en banc*). In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, a petitioner must normally demonstrate both deficient performance and prejudice, meaning that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Id.</u> Effective assistance of appellate counsel "does not require the presentation of all issues on appeal that may have merit." <u>Smith v. Murray</u>, 477 U.S. 527, 536 (4th Cir. 2014) ("winnowing out weaker arguments on appeal and focusing on those more likely to prevail … is the hallmark of effective appellate advocacy.") (internal quotations marks and citations omitted). However, appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." <u>United States v. Mason</u>, 774 F.3d 824, 828-29 (4th Cir. 2014). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal … with the strength of the arguments that were raised." <u>United States v. Allmendinger</u>, 894 F.3d 121, 126 (4th Cir. 2018). To show prejudice, a petitioner must show a "reasonable probability ... he would have prevailed on his appeal" but for his counsel's unreasonable failure to raise an issue. <u>Smith v. Robbins</u>, 528 U.S. 259, 285–86 (2000); <u>see</u> <u>also</u> <u>United States v. Mannino</u>, 212 F.3d 835, 845–46 (3d Cir. 2000) ("The test for prejudice under <u>Strickland</u> is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal.").

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior

proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## VI.    DISCUSSION[3]

### (1)    Trial Court Error

#### (A)    Proffer Agreement

Petitioner argues that the Court: (i) misconstrued the Proffer Agreement; and (ii) erroneously found that the Government did not breach that agreement. Petitioner argues that, as a result of the Court's errors, the Government was improperly permitted to use immunized information in the indictment and at sentencing. He argues that the indictment should have been dismissed and that the leadership enhancement that relied on proffered information should not have been applied.

(i)    Petitioner's claim that the Court misconstrued the Proffer Agreement is waived and barred. Petitioner entered a knowing and voluntary guilty plea that waived all nonjurisdictional claims that preceded it and contained a valid post-conviction and appellate waiver. See Section (1)(B), *infra*. The Fourth Circuit specifically found on direct appeal that Petitioner's argument that the Court erred in interpreting the Proffer Agreement is within the scope of the guilty plea's appellate waiver. See Anderson, 628 Fed. Appx. at 875. Petitioner's claim that the Court erred by misconstruing the Proffer Agreement has therefore been waived by Petitioner's knowing and voluntary guilty plea and is barred by law of the case.

---

[3] Petitioner's arguments are lengthy, circular, and repetitive. The claims have been consolidated and renumbered to facilitate this discussion. Any arguments not specifically addressed in this Order have been considered and rejected.

(ii)     Petitioner's argument that the Court erred by finding that the Government did not breach the Proffer Agreement is also waived and barred. The Fourth Circuit has already found that Petitioner's knowing and voluntary guilty plea waived this nonjurisdictional claim, holding that, "to the extent Anderson argues that the district court erred in … allowing the use of Anderson's proffer statements at sentencing, those claims fall within the scope of the waiver." <u>Anderson</u>, 628 Fed. Appx. at 875. Petitioner is barred from relitigating this issue on § 2255 review. <u>See</u> <u>Roane</u>, 378 F.3d 382, 396 n. 7.[4]

Petitioner's claims that the Court misconstrued the Proffer Agreement, and the Government breached that agreement by using proffered information in the indictment and at sentencing, are also meritless. The record reveals that the Government did not use any proffered information before the grand jury or in the indictment. The Court held a lengthy hearing during which the Government presented evidence about the extensive evidence it gleaned from, *inter alia*, bank records, witness statements, and other public records, and the Court concluded that the United States did not make anything other than derivative use of Petitioner's statements. Even if the Government had relied on the proffered information before the grand jury, this would not have violated the Proffer Agreement. The Proffer Agreement prohibited the Government from using Petitioner's statements against him in its case in chief *at trial*. Nothing prevented the Government from presenting those statements to the grand jury and the agreement specifically allowed the Government to make derivative use of Petitioner's proffered information. Moreover, the Court concluded that Petitioner breached the Proffer Agreement by refusing to provide truthful information and failing to produce documents he had promised to disclose at the July meeting.

---

[4] To the extent that Petitioner attempts to raise new theories for his argument that the Court erred by misconstruing the Proffer Agreement or finding that the Government did not breach the Proffer Agreement, these are procedurally defaulted because Petitioner has not demonstrated cause and prejudice or actual innocence.

Petitioner's breach released the Government from its obligations under the Proffer Agreement such that any use of the proffered information, whether derivative or direct, was permitted. Petitioner's contention that the Proffer Agreement required the Government to obtain a prior ruling by the Court that Petitioner had breached the agreement is incorrect. See (3:10-cr-260, Doc. No. 32-1 at 1) ("It is further agreed that in the event it is determined by the United States that your client has violated any provision of this Agreement (including the provision that your client provide complete and truthful information), all statements made by your client shall be admissible in evidence during the Government's case-in-chief in any criminal proceeding against your client, including a prosecution for false statements, perjury, or obstruction of justice.").

Assuming that the Proffer Agreement extended to use of proffered information at sentencing,[5] Petitioner's claim that the Court erroneously relied on proffered information at sentencing is meritless. Petitioner raised this issue at the time of sentencing and the Court explained that it did not consider information barred by the Proffer Agreement or § 1B1.8 when it determined the sentence. Further, Petitioner's breach of the Proffer Agreement released the Government its obligations under that agreement so that its use at sentencing was not prohibited. See, e.g., United States v. Daniels, 189 Fed. Appx. 199 (4th Cir. 2006) (because defendant breached the proffer agreement by failing a polygraph test, the court did not err in relying on defendant's own statements and admissions to establish the factual predicates necessary to enhance his sentence under the guidelines). Moreover, Petitioner's present suggestion that the Court misapplied the sentencing guidelines is therefore a non-constitutional claim that is not cognizable on § 2255 review. See generally Moussaoui, 591 F.3d at 279 (defendant's guilty plea waived all

---

[5] The Fourth Circuit has noted that cases upholding the use of proffer statements during sentencing pursuant to Guidelines § 1B1.8 involve proffer agreements that explicitly allow the government to use the information during sentencing under certain conditions precedent. United States v. Lopez, 219 F.3d 343, 346 (4th Cir. 2000).

nonjurisdictional errors leading up to his conviction except those affecting the adequacy of his plea); see, e.g., United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999) (merely alleging a miscalculation of the guidelines does not give rise to a constitutional issue and therefore is not cognizable in the context of a § 2255 petition).

For the foregoing reasons Petitioner's § 2255 claims that the Court erroneously construed the Proffer Agreement, found that the Government did not breach the agreement before the grand jury, and erred by considering proffered information at sentencing, will be denied.

**(B)**     **Plea Agreement**

Petitioner contends that the Court erred by ignoring ambiguities in the Plea Agreement insofar as the integration clause's reference to a "separate document" meant the Proffer Agreement. He appears to argue that, as a result of the Government's breach of Proffer Agreement by presenting immunized information to the grand jury and including it in the indictment, the Government also breached the Plea Agreement and rendered it involuntary. He claims that the Court erred by failing to note this ambiguity in the Plea Agreement and by failing to construe the agreement in Petitioner's favor. Petitioner contends that he learned that the plea was induced by trickery and bath faith two days after sentencing. (Doc. No. 19 at 5).

Petitioner's claim that the Court misconstrued the Plea Agreement is procedurally defaulted from § 2255 review. Petitioner failed to raise this claim on direct appeal and he has failed to demonstrate the existence of cause and prejudice or actual innocence to excuse his procedural default of this claim. To the extent that he suggests that ineffective assistance of counsel is "cause," this claim fails because the underlying argument – that the Plea Agreement was misconstrued, breached via breach of the Proffer Agreement, and involuntary – is meritless and counsel had no obligation to raise a meritless claim. See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this

Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."); Coley v. Bagley, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."). Petitioner does not appear to assert actual innocence and any such claim would be inconsistent with his guilty plea.

Petitioner essentially attempts to recast his claim that the Court erred by finding no breach of the Proffer Agreement as an error in construing the Plea Agreement. Petitioner's attacks on the Proffer Agreement fail for the reasons set forth in Section (1)(A), *supra* and, by extension, the instant attack on the Plea Agreement necessarily fails.

Petitioner's suggestion that the Court's alleged misconstruction of the Plea Agreement rendered his guilty plea involuntary is also refuted by the record. The record reveals that the Court complied with Rule 11 and the plea was knowingly and voluntarily entered. The Court confirmed during the Rule 11 hearing that Petitioner understood the charges, the consequences of his plea including his sentencing exposure, and the rights he was relinquishing by pleading guilty. Petitioner stated that he understood his maximum sentencing exposure, had discussed the sentencing guidelines with counsel, understood that any estimates of the prospective sentence are not binding, and that he may be sentenced up to the statutory maximum for each offense. Petitioner's plea agreement also contained an enforceable direct appeal and collateral review waiver, with the exception of the anticipatory breach argument raised in the Motion to Dismiss, (3:10-cr-260, Doc. No. 62), and claims of ineffective assistance and prosecutorial misconduct. See Lemaster, 403 F.3d at 220.

Petitioner's more specific contention that the Plea Agreement's integration clause was ambiguous and rendered his plea agreement involuntary is likewise refuted by the record. The Plea

Agreement's integration clause states that there are no other agreements, representations, or understandings between the parties other than those explicitly stated in the Plea Agreement, "or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (Id., Doc. No. 112 at 8). The Plea Agreement specifically refers to a Factual Resume that was filed with it. (3:10-cr-260, Doc. No. 112 at 5). No other document was filed with the Plea Agreement. See (Id., Doc. No. 111); see (Id., Doc. No. 132 at 5). The prosecutor referred to the integration clause at the plea hearing and confirmed that "[w]e have made no other promises. And we will not do so unless they're in writing and signed by both parties." (3:10-cv-260, Doc. No. 132). Petitioner stated under oath at the plea hearing that he understood the Plea Agreement, discussed it with counsel, and was voluntarily pleading guilty without any threats, promises, or coercion. Petitioner's present claim that he did not understand the Plea Agreement's residual clause and that his confusion rendered the guilty plea involuntary is refuted by his sworn statements to the contrary and will be rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221–22 (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).. Petitioner's claims that the Plea Agreement was ambiguous, integrated the Proffer Agreement, was breached, and that the Court misconstrued the Plea Agreement, will therefore be dismissed and denied.

**(2)** **Prosecutorial Misconduct**

**(A)** **Pre-Plea**

Petitioner claims that the Government engaged in prosecutorial misconduct by: (i) breaching the Proffer Agreement, failing to correct the Court's misinterpretation of the Proffer Agreement, and inducing Petitioner to plead guilty while knowing it had breached the Proffer Agreement; (ii) violating the Plea Agreement's integration clause by way of breaching the Proffer Agreement; and (iii) violating its discovery obligations.

**(i)-(ii)** Petitioner contends that the Government breached the Proffer Agreement by submitting Petitioner's proffered statements and information to the grand jury despite the Proffer Agreement's express promise of protection and failed to obtain a finding from the Court regarding Petitioner's breach before using that information in the indictment. He argues that the prosecutor failed to correct the Court's misinterpretation of the Proffer Agreement, which warrants relief pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, and by induced Petitioner to plead guilty while knowing the Government had breached the Proffer Agreement. He also argues that the Government violated the Plea Agreement's integration clause by way of breaching the Proffer Agreement. Petitioner argues in his Reply that he learned that the plea was induced by "trickery" and bad faith two days after sentencing. (Doc. No. 19 at 5).

As a preliminary matter, Petitioner's reliance on civil Rule 59(e) is misplaced. A party may file a Rule 59(e) motion to alter or amend no later than 28 days after the entry of a judgment in a civil case (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012). The Federal Rules of Civil Procedure "do not provide a vehicle by which [a defendant] may challenge his criminal judgment." United States v. Grapes, 408 Fed. Appx. 766, 766 (4th Cir. 2011). Rule

59(e) cannot provide Petitioner with any relief from his criminal judgment, and therefore, this argument is rejected.

This claim is procedurally defaulted from § 2255 review. Petitioner did not raise his claims about breach of the Plea Agreement in his criminal case or on direct appeal. He argues that ineffective assistance of appellate counsel excuses his procedural default of this claim. However, this claim is meritless for the reasons discussed below and counsel cannot be deemed ineffective for asserting a stronger claim on appeal and declining to assert a meritless one. See Knowles, 556 U.S. at 123; Coley, 706 F.3d at 752. Petitioner does not appear to assert actual innocence and any such claim would be inconsistent with his knowing and voluntary guilty plea.

This claim is waived and meritless. The Fourth Circuit has rejected Petitioner's attempt to recharacterize his argument that the Government breached the Proffer Agreement by using proffered information before the grand jury, as a claim of prosecutorial misconduct. See Anderson, 628 Fed. Appx. at 875 ("Anderson's argument that the Government breached the [proffer] agreement by using before the grand jury information obtained during the proffer sessions is a nonjurisdictional defect waived by Anderson's guilty plea."). The Fourth Circuit did not address Petitioner's attempt to recast this claim as one of ineffective assistance of counsel because Petitioner failed to raise that claim in his initial appellate brief. Id. at 875 n. 3. Any attempt to do so is rejected because the essence of the claim is one of trial court error, not prosecutorial misconduct.

Petitioner simply reiterates his substantive attacks on the Proffer Agreement and Plea Agreement but recasts them in terms of prosecutorial misconduct in an apparent attempt to avoid the Plea Agreement's appellate waiver provision. The Government did not breach the Proffer Agreement or the Plea Agreement as set forth in Sections (1)(A)-(B), *supra*. Nor did any of the

Government's actions with regards to the Proffer Agreement render Petitioner's guilty plea involuntary. See Section (1)(B), *supra*. Petitioner's attempt to recast these claims as allegations of prosecutorial misconduct does not alter the conclusion that these claims are waived, have already been rejected by the Fourth Circuit, and are meritless for the reasons previously stated.

      **(iii)**    Petitioner contends that the Government violated its discovery obligations pursuant to Brady[6] and Giglio[7] by failing to disclose to the Court the actual checks that Petitioner produced during his grand jury appearance, by using a chart to convey the checks' content, and by consistently lying to the Court through motions and testimony.

      Petitioner's Brady claim is procedurally defaulted from § 2255 review. Petitioner attempts to avoid procedural default by arguing that he did not present his discovery violation claim on direct appeal because evidence was suppressed and he did not a copy of the grand jury transcript until after the direct appeal, (Doc. No. 8 at 10), and that his default is excused by ineffective assistance of appellate counsel. These arguments fail because the Brady arguments are meritless as set forth in the discussion that follows. See Banks v. Dretke, 540 U.S. 668, 690 (2004) (noting that the cause and prejudice standard parallels two of the three components of a Brady claim); see Schneider v. United States, 864 F.3d 518 (7th Cir. 2017) (appellate counsel was not ineffective for failing to raise trial counsel's alleged ineffective assistance on direct appeal because the complaints about trial counsel were meritless). Nor can Petitioner plausibly establish actual innocence in light of his knowing and voluntary guilty plea.

      Petitioner's knowing and voluntary guilty plea waived the Government's alleged violation of Brady by failing to disclose impeachment evidence because it is a nonjurisdictional defect. See

---

[6] Brady v. Maryland, 373 U.S. 83, 87 (1963).

[7] Giglio v. United States, 405 U.S. 150, 153–55 (1972).

generally Tollett, 411 U.S. at 267; United States v. Ruiz, 536 U.S. 622, 633 (2002) ("the Constitution does not require the Government to disclose material impeachment evidence prior to entering a guilty plea with a criminal defendant."); see, e.g., United States v. Richards, 314 Fed. Appx. 522, 525 (4th Cir. 2008) ("The failure to disclose Brady evidence prior to a guilty plea does not establish a constitutional violation because impeachment information is a safeguard for a fair trial, not a plea.").

Petitioner's Brady claim is also meritless. The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady, 373 U.S. at 87. The duty to disclose such evidence is applicable even though there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and that duty encompasses impeachment evidence as well as exculpatory evidence, United States v. Bagley, 473 U.S. 667, 676 (1985). Evidence is "material" if there is a reasonable probability that it would have produced a different outcome. United States v. Young, ___ F.3d ___, 2019 WL 757835 (4th Cir. Feb. 21, 2019) (supposed recordings between defendant and an FBI informant would not have been material because the jury found, despite the admission of similar comments, that that defendant was predisposed to support terrorism).

Petitioner cannot show suppression, favorability, or materiality. First, there was no suppression because the alleged checks originated with Petitioner; the Government had no obligation to provide Petitioner with documents that it received from him. Second, Petitioner fails to explain how the checks were favorable. His argument appears to be that the original checks would have impeached the Government's chart that only included the check number and amount, and that the Government breached the Proffer Agreement by using the checks that Petitioner had

provided as part of that agreement. However, his claim is vague and conclusory to the extent that he fails to explain how the checks themselves differed in any meaningful way from the Government's chart, and this Court and the Fourth Circuit have rejected his argument that the Government breached the Proffer Agreement. <u>See</u> Section (1)(A), *supra*. Third, Petitioner has failed to show materiality such that the checks probably would have resulted in a different outcome had they been disclosed. Petitioner contends that the checks were material because the Government violated the Proffer Agreement by including them in the indictment, the checks were not available from any other source, and this rendered his plea involuntary. This Court and the Fourth Circuit have already rejected Petitioner's argument that the Government breached the Proffer Agreement. Further, his contention that the Government could not have obtained the checks any other way is refuted by the record. <u>See</u> (3:10-cr-260, Doc. No. 49 at 71-72) (Government issued subpoenas to lenders to get loan folders and records associated with Petitioner and Work Solutions; Petitioner's contention that the Government could not have obtained the checks from any other source is incorrect). No discovery violation occurred and therefore Petitioner's <u>Brady</u> claim is procedurally defaulted, waived, and meritless.

Petitioner appears to argue that the Government violated <u>Giglio</u> by making misrepresentations to the Court about the correct construction of the Proffer Agreement and the Plea Agreement's integration clause, and whether or not the Government breached the Proffer Agreement. <u>See</u> <u>Giglio</u>, 405 U.S. at 150 (deliberate deception of the court and jurors by presenting knowingly false evidence is incompatible with the rudimentary demands of justice). Petitioner is again attempting to relitigate the construction of the Proffer Agreement and Plea Agreement, and the Government's alleged breach by recasting them as discovery violations. These claims are

meritless, waived, and procedurally defaulted for the reasons set forth in Sections (1)(A)-(B), *supra*.

### (B)    Plea

Petitioner contends that the Government committed fraud during plea negotiations by negotiating in bad faith while knowing that proffered information had already been included in the indictment. He further argues that the prosecutor engaged in misconduct by failing to reveal to the defense or Court that the Proffer Agreement is the "additional agreement" referenced in the Plea Agreement. (Doc. No. 8 at 12). Petitioner contends that this violated rule 11(e)(2) and rendered the plea involuntary. He seeks relief pursuant to Rule 60(d)(3) for this alleged due process violation.

Petitioner's reliance on Rule 60(d)(3) is misplaced. Rule 60(d)(3) of the Federal Rules of Civil Procedure provides that Rule 60(b) does not limit a court's power to set aside a judgment for "fraud on the court." Rule 60 does provide relief from a judgment in a criminal case. <u>See</u>, <u>e.g.</u>, <u>United States v. Jenkins</u>, 2009 WL 1702076 (W.D.N.C. June 16, 2009). Therefore, Petitioner's attempt to apply Rule 60 to his criminal conviction will be rejected.

This claim reiterates Petitioner's involuntary plea and breach claims that are addressed in Sections (1)(B) and (2)(A), *supra*, and it fails for the same reasons.

### (C)    Sentencing

Petitioner contends that the Government violated the Plea Agreement's integration clause by failing to adhere strictly to the Proffer Agreement's terms and conditions when the Government included debriefing information in the PSR and arguing for a leadership enhancement based on

that information. He argues that any ambiguity should have been resolved in his favor and that the error resulted in a leadership role enhancement.

This claim yet again reiterates Petitioner's arguments that are addressed in Sections (1)(A)-(B), *supra*, and it fails for the same reasons. To the extent that Petitioner argues that his procedural default is excused by the ineffective assistance of counsel, that argument fails because the breach and sentencing claims are meritless for the reasons set forth in Sections (1)(A)-(B). See Knowles, 556 U.S. at 123 ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."); Coley, 706 F.3d at 752 ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial.").

**(3)** **Ineffective Assistance of Counsel**

**(A)** **Pre-Plea**

Petitioner contends that counsel was ineffective for: (i) advising Petitioner to enter into the Proffer Agreement which carried no actual or substantive value and provided no protection from criminal proceedings where incriminating disclosures were made in reliance on the agreement; and (ii) failing to adequately argue that the Government breached the Proffer Agreement. Petitioner argues that, but for counsel's deficient performance, he would not have signed the Proffer Agreement and the indictment would have been dismissed.

**(i)** Assuming that Petitioner's lawyer at the time advised Petitioner to sign the Proffer Agreement, this was not ineffective assistance of counsel.

First, no right to counsel had attached at the time Petitioner signed the Proffer Agreement. The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence." The right to counsel "attaches only at

or after the time that adversary judicial proceedings have been initiated against him." United States v. Gouveia, 467 U.S. 180, 188 (1984) (citations omitted); see Powell v. Ala., 287 U.S. 45 (1932). The initiation of judicial criminal proceedings can occur via formal charge, preliminary hearing, indictment, information, or arraignment. Kirby v. Ill., 406 U.S. 682, 688 (1972). In the underlying criminal case, Petitioner signed the Proffer Agreement on May 21, 2010, (3:10-cr-260, Doc. No. 32-1), at which time, he had not been formally charged, indicted, arraigned, or brought before the Court for a preliminary hearing. See (Id., Doc. No. 1) (indictment dated December 15, 2010; initial appearance April 27, 2011; arraignment April 29, 2011). Therefore, even if counsel provided deficient advice with regards to the Proffer Agreement, it was not ineffective in a constitutional sense.

Second, Petitioner cannot demonstrate deficient performance because any advice to sign the Proffer Agreement was reasonable and did not prejudice him. Petitioner knew before he signed the Proffer Agreement that the Government intended to prosecute him with or without his cooperation. See (Id., Doc. No. 49 at 44). Reasonable counsel could have concluded that cooperating with the Government would have provided Petitioner his best opportunity to obtain a favorable plea offer and/or sentence in the inevitable prosecution. Nor can Petitioner demonstrate prejudice. He has failed to show that the charges or sentence would have been more favorable had he chosen not to sign the Proffer Agreement.

(ii) Petitioner's contention that counsel failed to adequately argue that the Government breached the Proffer Agreement is refuted by the record. Counsel vigorously argued in two Motions to Dismiss and hearings that the Government breached the Proffer Agreement and preserved the anticipatory breach issue for appeal. Petitioner has failed to identify any further action that counsel could have taken to present and preserve the breach argument that would have

probably resulted in a different outcome. Therefore, Petitioner has failed to establish either deficient performance or prejudice and this claim will be denied.

**(B)** <u>**Plea**</u>

Petitioner contends that counsel: (i) failed to notice the Plea Agreement's integration clause and correct the Court's misinterpretation of the Plea Agreement, and (ii) misunderstood the applicable sentencing enhancements. Petitioner argues that he did not understand the integration clause or applicable sentencing guidelines and would have proceeded to trial if he had received accurate advice.

**(i)** The record reflects that no ineffective assistance occurred with regards to the Plea Agreement and its integration clause because there was no misinterpretation by the Court or counsel. <u>See</u> Section (1)(B), *supra.* Counsel cannot be deemed ineffective for failing to raise a meritless claim. <u>See</u> <u>Knowles</u>, 556 U.S. at 123 ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."). Therefore, Petitioner's allegations of ineffective assistance and involuntary plea will be denied.

**(ii)** Nor was there any ineffective assistance with regards to counsel's advice about sentencing enhancements. The Plea Agreement sets forth Petitioner's maximum sentencing exposure and Petitioner acknowledged during the Rule 11 hearing that the Court will consider the Guidelines in determining the sentence, the sentence has not yet been determined and any estimate of the likely sentence "is a prediction rather than a promise," the Court has final discretion to impose any sentence up to the statutory maximum for each count, the Court is not bound by any recommendations or agreements by the United States, and Petitioner may not withdraw his guilty pleas as a result of the sentence imposed. (3:10-cr-260, Doc. No. 112 at 2). Petitioner

acknowledged during the Rule 11 hearing that discussed the Guidelines with counsel, generally understood how the Guidelines work, that the advisory range had not yet been determined, that there is no certainty until the PSR is prepared, and that the Court could impose a sentence higher or lower than the Guidelines. (Id., Doc. No. 132 at 5, 44-49). Because the Plea Agreement and Court's statements during the Rule 11 hearing advised Petitioner correctly about his sentencing exposure and uncertainty of the guideline range at that juncture, any miscalculation by counsel was not prejudicial and did not render the plea involuntary. See United States v. Foster, 68 F.3d 86, 87 (4th Cir. 1995) (any misinformation petitioner may have received from his attorney about whether he qualified as a career offender was corrected by the trial court at the Rule 11 hearing, and thus petitioner was not prejudiced).

### (C)     **Appeal**

Petitioner contends that his appellate lawyer failed to effectively argue that the Government engaged in prosecutorial misconduct by presenting Petitioner's immunized information to the grand jury and including it in the indictment, and by relying on it at sentencing to support a leadership role enhancement. Petitioner alleges that he instructed counsel to pursue the prosecutorial misconduct claims on direct appeal before the opening brief was filed. Counsel ignored the letter and reduced the claims to a footnote, then attempted to improperly expand the arguments in the reply brief, which waived them. Petitioner argues there was ample evidence that the Government engaged in prosecutorial misconduct pursuant to Fourth Circuit precedent. Had counsel followed the appellate rules and Petitioner's instructions, the prosecutorial misconduct arguments would have been addressed by the Court and the indictment would have been dismissed.

Counsel was not ineffective for failing to argue on direct appeal that the immunized statements were improperly presented to the grand jury and included in the indictment and at sentencing because those claims are meritless. <u>See</u> Section (1)(A)-(B), *supra.*

Appellate counsel was not ineffective for failing to argue that the Government engaged in prosecutorial misconduct by presenting immunized information to the grand jury or including it in the indictment because that theory was foreclosed by Petitioner's guilty plea and is meritless. The claim was not clearly stronger than the preserved argument that Petitioner reserved as part of his conditional plea and counsel was not ineffective for choosing not to present this meritless claim. <u>See</u> <u>Knowles</u>, 556 U.S. at 123 ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success."); <u>Coley</u>, 706 F.3d at 752 ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."). Moreover, the claim that appellate counsel failed to challenge the Sentencing Guidelines enhancement is refuted by the record. Appellate counsel did argue that the Court erred by allowing the use of Petitioner's proffered statements at sentencing. The Fourth Circuit found that the claim fell within the scope of the plea waiver. <u>Anderson</u>, 628 Fed. Appx. at 875 ("to the extent Anderson argues that the district court erred in interpreting the proffer agreement and allowing the use of proffer statements at sentencing, those claims fall within the scope of the appellate waiver"). Therefore, this claim will be denied.

## VII.   CONCLUSION

For the foregoing reasons, the Court dismisses with prejudice and denies Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 8).

**IT IS, THEREFORE, ORDERED** that:

1.    *Petitioner's* Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 8), is **DISMISSED** with prejudice and **DENIED**.

2.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: March 12, 2019

Max O. Cogburn Jr.
United States District Judge