UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cr-260-MOC-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| GREGORY D. ANDERSON, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 333). The Government has responded in opposition to the motion, (Doc. No. 335), and Defendant has filed a Reply, (Doc. No. 337). For the following reasons, Defendant's motion will be **DENIED**.

## I. BACKGROUND

### A. Defendant's Criminal Charges

On June 19, 2012, a grand jury charged Defendant in a 46-count Second Superseding Bill of Indictment (SSBI) with conspiracy to defraud the United States (18 U.S.C. § 371); wire and bank fraud (18 U.S.C. §§ 1343, 1344); HUD fraud (18 U.S.C. § 1010); concealment money laundering and conspiracy (18 U.S.C. § 1956(a)(1)(B)(i) and (h); transactional money laundering (18 U.S.C. § 1957); and assaulting and causing bodily harm to persons assisting the United States in his arrest (18 U.S.C. § 111). Defendant pleaded guilty to five counts of the SSBI. (Plea Agreement (Doc. No. 112) and Acceptance and Entry of Guilty Plea (Doc. No. 114)).

The Factual Basis filed with Defendant's plea agreement describes a three-year mortgage fraud conspiracy in which Defendant and his co-conspirators obtained over $645,000 in

1

kickbacks from mortgage loans and caused over $1.7 million in losses to federally insured and private lenders, as well as the Federal Housing Administration (FHA) and the Federal Deposit Insurance Corporation (FDIC). (See Factual Basis (Count One) (Doc. No. 111 at ¶ 12) and Final Pre-Sentence Report (PSR) (Doc. No. 241 at ¶ 19)). In Count Two, Defendant admitted that he committed bank fraud when he inflated the appraised value of a home listed for sale at $689,900 to $824,000 by promising kickbacks to the realtor and appraiser. (Id. at ¶¶ 25–30). In Count 22, Defendant used a straw borrower—whose income he inflated with fraudulent documents from his "credit repair business"—to purchase a property with an FHA insured mortgage. (Id. at ¶¶ 31–43). The value of the property was inflated by a purported renovation performed by a shell company also controlled by Defendant. (Id.). In Count 33, Defendant admitted he disguised his interest in the fraudulent transaction in Count 22 by cashing closing checks payable to a shell renovation company in someone else's name at a cash checking business. (Id. at ¶¶ 44–48).

Finally, in Count 46, Defendant confessed that he violently tried to evade arrest on these federal charges by assaulting state law enforcement officers assisting the Federal Bureau of Investigation (FBI). (Id. at ¶¶ 49–60). After five months of hiding from the FBI, a surveillance team tracked Defendant to a residence in Charlotte, North Carolina. (Id. at ¶ 53). Defendant was sleeping in a car parked behind the house when officers with the Charlotte Mecklenburg Police Department's Violent Crime Apprehension Team (VCAT) approached the car. (Id. at ¶ 54). Instead of complying with the officers' directions, Defendant—trying to evade arrest—started the car, turned the steering wheel so as to drive around a parked truck, gunned the engine, and rocked the car back and forth. (Id. at 56). VCAT officers deflated the car's tires to prevent Defendant's escape and broke out the windows in an attempt to subdue Defendant. (Id.). Defendant continued to resist arrest and fought the officers trying to subdue him. (Id. at ¶ 57).

Two VCAT officers had to go to the hospital to have their wounds cleaned and treated. (Id. at ¶ 58).

According to the PSR, the guideline sentence for Defendant—whose prior convictions placed him in Criminal History Category III—was Offense Level 37, with a prison sentence between 262 and 327 months. (Id. at ¶ 104). However, the Court granted a defense objection to a two-point enhancement for using sophisticated means to launder proceeds of his fraud. (Id. at ¶ 72; Statement of Reasons, Doc. No. 242 (Sept. 3, 2014)). The Court also denied the Government's request for a six-point enhancement under U.S.S.G. § 3A1.2 because the VCAT officers were victims of only Count 46 and not "victims" of the charged money laundering or fraud offenses. (PSR at 33). Moreover, the Court varied downward two-levels because "the 16-level increase for loss overstates the Defendant's responsibility and gain in this matter." (Statement of Reasons, Doc. No. 242).

Defendant has a significant and violent criminal history. In 1990 and 1993, he was sentenced to imprisonment in state courts for possession with intent to distribute crack cocaine. (PSR at ¶¶ 84–85). In 2002 and 2003, Defendant received suspended prison sentences for assault with a deadly weapon in North Carolina and criminal domestic violence in South Carolina. (Id. at ¶¶ 94–95). Moreover, he committed the charged offenses while he was on probation for assault with a deadly weapon and maintaining a vehicle/dwelling for controlled substances. (Id. at 98). These convictions did not include a litany of pending arrests and voluntary dismissals over the bulk of Defendant's adult life. (Id. at ¶¶ 101–22).

### B. Defendant's Current Sentence

The Court sentenced Defendant to 180-months term of imprisonment, to pay $2,189,641.28 in restitution, and three-years supervised release. (Judgment, Doc. No. 241 (Sep.

3

Case 3:10-cr-00260-MOC-DSC   Document 338   Filed 10/27/22   Page 3 of 8

3, 2014). Defendant began his sentence on July 29, 2014, and has now served approximately 90% of his projected term. Defendant—now age 55—is currently serving the remainder of his prison term at the Alston Wilkes Society Residential Reentry Center (Alston Wilkes RRC) in Columbia, South Carolina. Defendant's release date is February 5, 2023. He is currently eligible for home detention.

**C. Defendant's Request for Compassionate Release**

On or about August 30, 2022, Defendant submitted a request for early release to the Warden at FCI Bennettsville, where he was previously incarcerated. The Warden denied Defendant's request for early release. In his motion before this Court, Defendant essentially raises four legal issues: (1) he repeats his previous arguments that the money laundering charge to which he pled guilty was barred by Santos, 553 U.S. at 507; (2) the loss amount applied by the Probation Officer in the PSR was incorrectly calculated on the aggregate amount of the fraudulent mortgage loan applications and not the losses attributed to Defendant, resulting in a two-level increase in his Guidelines; (3) his assault on the officers attempting to arrest him did not constitute "reckless endangerment," and (4) the Government violated his due process rights by using his statements in violation of his proffer agreement. (Doc. No. 333 at 2–12). Defendant also asks the Court to consider "that the COVID-19 pandemic made his sentence 'greater than necessary'" because he has been subject to lockdowns, isolated from family and friends, and impacted by the economic recession. (Id. at 13). Defendant does not raise any health issues or conditions elevating his risk to COVID-19. Bureau of Prisons (BOP) medical records show that Defendant received two doses of the Pfizer vaccine while in BOP custody. BOP COVID-19 Vaccine Consent forms.

On September 7, 2022, the Court ordered the Government to respond. (Doc. No. 334).

4

Case 3:10-cr-00260-MOC-DSC   Document 338   Filed 10/27/22   Page 4 of 8

3, 2014). Defendant began his sentence on July 29, 2014, and has now served approximately 90% of his projected term. Defendant—now age 55—is currently serving the remainder of his prison term at the Alston Wilkes Society Residential Reentry Center (Alston Wilkes RRC) in Columbia, South Carolina. Defendant's release date is February 5, 2023. He is currently eligible for home detention.

**C. Defendant's Request for Compassionate Release**

On or about August 30, 2022, Defendant submitted a request for early release to the Warden at FCI Bennettsville, where he was previously incarcerated. The Warden denied Defendant's request for early release. In his motion before this Court, Defendant essentially raises four legal issues: (1) he repeats his previous arguments that the money laundering charge to which he pled guilty was barred by Santos, 553 U.S. at 507; (2) the loss amount applied by the Probation Officer in the PSR was incorrectly calculated on the aggregate amount of the fraudulent mortgage loan applications and not the losses attributed to Defendant, resulting in a two-level increase in his Guidelines; (3) his assault on the officers attempting to arrest him did not constitute "reckless endangerment," and (4) the Government violated his due process rights by using his statements in violation of his proffer agreement. (Doc. No. 333 at 2–12). Defendant also asks the Court to consider "that the COVID-19 pandemic made his sentence 'greater than necessary'" because he has been subject to lockdowns, isolated from family and friends, and impacted by the economic recession. (Id. at 13). Defendant does not raise any health issues or conditions elevating his risk to COVID-19. Bureau of Prisons (BOP) medical records show that Defendant received two doses of the Pfizer vaccine while in BOP custody. BOP COVID-19 Vaccine Consent forms.

On September 7, 2022, the Court ordered the Government to respond. (Doc. No. 334).

The Government has responded in opposition to the motion. (Doc. No. 335). Thus, this matter is ripe for disposition.

## II. DISCUSSION

### A. LEGAL STANDARD

Once a defendant properly exhausts his administrative remedies, this Court may reduce Defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. That policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, the Court is "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). The Court still may consider the § 1B1.13 factors, however, because that Section "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. As the movant, Defendant still bears the burden of establishing that
5

he is eligible for a sentence reduction, and that includes establishing that "extraordinary and compelling reasons" justify his request. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Court will deny Defendant's motion because he raises legal and sentencing issues that (1) have been previously litigated and decided by this Court; (2) are baseless, and (3) even if considered on their merits are not so extraordinary or compelling—alone or in combination with any other factor raised in the motion—as to justify an exception to the principal that sentences are final when imposed. See 18 U.S.C. § 3582(c).

### B. Defendant's Attempt to Re-litigate Matters Already Decided

First, Defendant claims his guilty plea to money laundering was improvident because the misconduct alleged in Count 33 violates the merger doctrine in Santos, 553 U.S. at 507. This Court already overruled his motion to dismiss the money laundering counts in the SSBI based on Santos, and Defendant cannot now re-raise this legal challenge.

Defendant also claims the losses attributed to his mortgage fraud scheme were improperly calculated under U.S.S.G. § 2B1.1(b)—i.e., the PSR calculated the intended losses at more $1 million, whereas the actual losses attributed to Anderson were more than $650,000, but less than $1 million—resulting in a two-level increase in his Guidelines. Although the Court adopted the intended loss estimated in PSR, paragraph 70, it also granted a two-level variance in its announced sentence because "the 16 level increase for loss overstates the defendant's responsibility and gain in this matter." (Statement of Reasons, Doc. No. 242 (Sept. 3, 2014)). In other words, the Court granted Defendant the relief he now seeks in his original sentence.

Defendant also argues that he was unfairly punished for "reckless endangerment in the course of the offense or immediate flight therefrom." (Doc. No. 333 at 8–9). The Factual Basis

6

signed by the Defendant clearly detailed his attempts to use his car as a lethal weapon to avoid arrest. (Factual Basis, Doc. No. 111 (Aug. 29, 2012) at ¶ 49). This Court properly found that Defendant resisted arrested and thereby caused bodily injury to two officers, resulting in a two-level enhancement under U.S.S.G. § 3C1.2. (PSR at ¶ 76). However, the Court rejected the Government's request for an additional six-levels for the "Official Victim" enhancement under U.S.S.G. § 3A1.2 because it had been applied to the assault conviction (Count 46). (PSR at 33). Therefore, the enhancement for eluding arrest was applied to the money laundering offense in Count 33, but the enhancement for official victim was not. (See id.). Defendant omits this context when selectively quoting from the sentencing transcript.

Defendant also rehashes his complaint that the Government violated its non-attribution agreement by using leads from the Defendant's statements to obtain an indictment against him. (Doc. No. 333 at 9–12). These claims were the subject of two evidentiary hearings by this Court on November 7-8, 2011 and July 26, 2012. See (Doc. Minute Orders). This Court's finding that the Government did not breach its proffer agreement with the Defendant was affirmed by the Fourth Circuit Court of Appeals. See (Doc. No. 282 (Oct. 21, 2015)).

### C. Defendant's Arguments Related to COVID-19

Defendant also mentions the COVID-19 pandemic and its impact on him. Significantly, Defendant has been fully vaccinated; thus, he does not present any extraordinary or compelling reason for compassionate release. See United States v. Butler, No. 18-cr-20801, 2022 WL 317753, at *4 (E.D. Mich. Feb. 2, 2022).

### D. Defendant's Release to a Half-Way House

The Court notes that Defendant has been released to a half-way house in Columbia, South Carolina. In this regard, the BOP exercised its discretion to release Defendant to a RRC

7

rather than directly to home confinement after considering Defendant's risk level and his need for a reasonable opportunity to adjust to and prepare for reentry into society. Requiring a prisoner to reside in a half-way house does not present an undue risk or warrant compassionate release. United States v. Soliman, 17-cr-007, 2020 WL 2329266 (E.D.N.Y. May 11, 2020).

### E. Relevant Sentencing Factors under 18 U.S.C. § 3553

Even if Defendant could show extraordinary and compelling reasons warranting an early release, consideration of the Section 3553 factors does not favor early release, including the seriousness of his underlying criminal charges and his prior criminal history, including prior convictions for possessing crack cocaine with the intent to distribute, assault with a deadly weapon, and maintaining a dwelling for the use of controlled substances. (PSR at ¶¶ 84–99). Moreover, he was on probation for assault with deadly weapon when he committed the offenses charged in this case. (Id. at 98). Given the severity of Defendant's crimes and his criminal history, early release is not warranted.

For all these reasons, the Court will deny Defendant's motion.

### ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 333), is **DENIED**.

Signed: October 26, 2022

Max O. Cogburn Jr
United States District Judge